UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY CABE BOOTH | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-cv-00194-X |
| | § | |
| ANSCHUTZ ENTERTAINMENT GROUP, INC; AEG LIVE LLC; ANSCHUTZ TEXAS LP; AEG PRESENTS, LLC; and ROBIN PHILLIPS, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
RULE 12(b)(6) MOTION TO DISMISS**

Plaintiff Cabe Booth ("Cabe") files this Response in Opposition to the Rule 12(b)(6) Motion to Dismiss of Defendants Anschutz Entertainment Group, Inc., AEG Live LLC, Anschutz Texas LP, AEG Presents, LLC and Robin Phillips (referred to herein as "Defendants" or "AEG") [Dkt. No. 11], and shows the Court the following:

   I.   **STANDARDS FOR FEDERAL RULE 12(b)(6) MOTION**

In considering a Motion under Rule 12(b)(6), the complaint is construed in plaintiff's favor. Factual allegations of the complaint must be taken as true, and all reasonable inferences must be drawn in plaintiff's favor. *Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570, 127 S. Ct. 1955, 1974 (2007). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A pleading is sufficient if the pleading as a whole, including any allegations on information and belief, states a plausible claim. *See Keegan v. American Honda Motor Co.*, 838 F.Supp.2d 929, 961 n.85 (C.D. Cal. 2012) (plausibility standard does not prevent plaintiff from pleading facts on information and belief when facts are peculiarly within the possession and control of defendant or when belief is based on factual information that makes inference of culpability plausible).

The purpose of a motion under Rule 12(b)(6) is "to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Wright & Miller, *Federal Practice & Procedure* § 1356. *See Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) (a 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses); *ACLU Foundation of Southern California v. Barr*, 952 F.2d 457, 293 (D.C. Cir. 1991) (Rule 12(b)(6) is not a tool for testing the truth of allegations or for determining whether a plaintiff has evidence to back up those allegations); *Sherrod v. United Way Worldwide*, 821 Fed.Appx. 311, 315 (5th Cir. 2020).

## II.     APPLICATION OF RULE 12(b)(6) STANDARDS

Defendants' Motion to Dismiss ignores the 12(b)(6) standards, consisting almost wholly of arguments about the facts and merits of the case and matters extrinsic to the Complaint. The Motion turns on its head the requirements to consider facts alleged in the complaint as true, instead asking the court to entertain Defendants' unsupported allegations as unassailable. Defendants' factual arguments are irrelevant on a Rule 12(b)(6) motion and should be disregarded. Cabe

responds below to some of Defendants' most egregious contentions, but objects to any implied requirement that it must overcome (or even respond) to Defendants' fact allegations.

### A. Complaint States a Claim under VARA

Plaintiff's Original Complaint [Dkt. No. 1] states enough facts to support a plausible claim for relief brought pursuant to the Visual Artists Rights Act, 17 U.S.C. § 106A ("VARA"). VARA § 106A grants the right of attribution upon an author of a work of visual art "to claim authorship of that work." "The artist may demand that her name be used in conjunction with a display of the work." *Nimmer on Copyright* 8D.06[B][1]. The works are not required to be works of recognized stature for purposes of the attribution right. *Id*. Further, VARA 106A grants to an author of a work of visual art the right of integrity, the author having the right to prevent any destruction of a work of recognized stature, where any intentional or grossly negligent destruction is a violation of that right. *Id*., § 106(a)(3) and (b).

#### 1. Author of Works of Visual Art

The complaint establishes that Cabe is the author of works of visual art, painted portraits, for the Texas Trust CU Theatre at Grand Prairie, that is, the Defendants' "Theatre" and that hundreds of Cabe's paintings were displayed on the walls of the Theatre. (¶ 16; **App. A** to the Complaint lists, with photos, 355 of Cabe's oil paintings sold to the Theatre and delivered to Defendants' possession. (¶ 17). The statements in the complaint are to be assumed true; in addition here, Defendants do not deny these facts.

## 2. Right of Attribution

The complaint states that Defendants violated Cabe's right of attribution by destroying and/or mutilating his Artworks and depriving him of the right to receive credit for his work (Compl. ¶ 51). Defendants admit they failed to give Cabe credit for his work, stating that Cabe's artwork was hung in Defendants' Theatre "without any reference to the person … who prepared the work." (Motion, p. 6).

## 3. Right of Integrity: right to prevent destruction of author's works

The complaint states that Cabe was informed that Defendants had mutilated and/or destroyed performer portraits he painted for the Theatre and trashed and disposed of them in a dumpster. (Compl. ¶ 24). In a letter dated November 2, 2023, Defendants' counsel admitted to Defendants' disposing of "some" of Cabe's artworks. (¶ 26).

Defendants' Motion presents a defense to the destruction of Cabe's works, namely that the artwork was destroyed by a freeze and not by Defendants. Presentation of a purported defense, of course, does not defeat the assertion of factual allegations in a complaint for purposes of a Rule 12(b)(6) motion. Further, Defendants' defense assertions are incomplete and unsupported. Defendants selected dozens of photographs of flood damage to attach to their Motion – while a few photos show hallways with artwork, Defendants identify none of the art, despite having a list with photos of Cabe's paintings (App. A to the Compl.).

AEG consistently refuses to identify which and how many paintings were destroyed, whether by flood or by AEG.[1] In response to a demand that Defendants confirm whether the

---

[1] Defendants assert that their failure to keep or destruction of records works in their favor, preventing Cabe from prevailing since he cannot identify the destroyed paintings. This claim should be rejected. Unfortunately for Defendants, Cabe kept records of the paintings produced for

artworks "have actually been destroyed" including "produc[ing] proof that it has not destroyed Mr. Booth's works, and … identify the location of those works," (Att. to Motion, pp. 1-2), AEG's counsel responded (pp. 3-7), claiming AEG "only disposed of damaged artwork that was already destroyed by [the freeze]" but that "AEG is under no obligation to produce proof regarding [the] artworks or to identify the location of those works." (pp. 4-5, 11/2/23 letter).

AEG's 11/2/23 letter asserted that "[T]here are now approximately 100 *undamaged* admat art boards stored in the venue's basement and in a few closets. Less than 20 are believed to be located in the venue's administrative, office, and backstage areas." (Att. To Motion, pp. 4-5; emphasis added). Cabe has identified 351 of his paintings sold to and displayed by AEG. (App A to Compl.). AEG's own insurance claim shows that *less than 16* of Cabe's paintings were destroyed by the freeze. (p. 14, Att. to Defendants' Motion; insurance claim, p. 5, bottom 2 entries: "16 Wooden Artwork" by "various artists" and "104 Poster board (Kinko's) artwork" by "various artists" were destroyed by the freeze Att. to Motion, p. 14).[2] That is, the insurance claim supports a conclusion that *less than 16 of Cabe's paintings were destroyed by the freeze*. It also shows that AEG has failed to account for over 200 of Cabe's paintings.

---

the Theatre (App. A to Compl.). This list can be correlated with AEG's remaining inventory of paintings (which Defendants have to date refused to provide) to determine which are unaccounted for by AEG (excepting the 16 unidentified paintings listed as destroyed by the freeze per AEG's insurance claim).

[2] As Defendants know, Cabe's artwork are oil paintings on plywood and impossible to confuse with "posters," "poster boards" from Kinko's, or foam boards. Defendants routinely muddle the artworks on display at the Theatre, lumping together Cabe's oil paintings with works by other artists. (Motion, pp. 2, 5, 17: "foam board poster portraits" taken by an independent photographer; at p. 2 n. 2, p.5 and n. 10: "Poster board (Kinko's)" works produced by a "commercial print shop" or in "photographic format"). This "confusion" creates a false link between Cabe's oil paintings and "posters," a subject matter excepted from protection under VARA.

4. **Right of Integrity: works of recognized stature**

Cabe's complaint states that he is a well-recognized artist in the Dallas arts and entertainment community who created a body of artworks which achieved recognized stature and which ultimately included hundreds of hand painted portraits of performers and famous persons appearing at local Dallas area venues. (Compl. ¶ 14). In about 1997, Cabe was initially commissioned to hand paint a "performer portrait" to memorialize the opening of the Curtain Club in Dallas. This painting was so well received, that the single painting commission turned into regular painting commissions at the Curtain Club and other venues. (¶ 15). The Complaint provides an address to a YouTube video of the Theatre wherein Cabe's works are lauded as "amazing" and "incredible." (¶ 18). Cabe's career and standing in the artistic community are also relevant to "recognized stature."

Determining "recognized stature" is an issue of fact for the trier of fact, with no single test to determine recognized stature. 2 *Darraby on Art Law* § 31:17. Courts have interpreted "recognized stature" to mean "1) that the visual art in question has 'stature,' i.e. is viewed as meritorious, and 2) that this stature is 'recognized' by art experts, other members of the artistic community, or by some cross-section of society." *Carter v. Helmsley-Spear, Inc.*, 861 F.Supp. 303, 325 (S.D.N.Y. 1994). *See Martin v. City of Indianapolis*, 192 F.3d 608, 612 (7th Cir. 1999) ("'recognized stature' involves community opinion … not a determination that [the] work is inherently meritorious"; plaintiff offered no evidence of experts but nonetheless established recognized stature via "certain newspaper and magazine articles, and various letters, including a letter from an art gallery director and a letter to the editor of the Indianapolis News"). Courts may also infer a work's recognized stature based on a creator's reputation. *See Lubner v. City of Los Angeles*, 53 Cal.Rptr.2d 24 (Cal. Ct. App. 1996) (the court "[a]ccept[ed] the Lubners' argument

that they are recognized artists who have created and exhibited their paintings and drawings for over 40 years, we assume that their [destroyed] art included works of recognized stature …").

Cabe's statements in his complaint are sufficient and presumed true for purposes of the Motion. Defendants' counsel's denigration of Cabe's works and their stature are, at best, inadmissible and conclusory statements of counsel, and are irrelevant to whether a claim has been stated in the complaint.[3]

### B.   VARA Exclusions

Defendants contend Cabe's paintings are excluded from VARA because they are "posters," "applied art," and/or "copied advertising and/or promotional materials"[4] (Motion, p. 3). Defendants denigrate Cabe's paintings as copied, easily replicated, having value only due to the entertainer's autograph, and having no creative input (pp. 5-6). Defendants also contend (falsely) that the artworks were never publicly displayed.

These assertions are specious. It is undisputed that Cabe's artworks were hand painted oil on wood. Defendants contend the paintings are "applied art" having a "utilitarian purpose as objects: that is, performer admat images to be autographed and kept as memorabilia" (Motion, p. 17). More rationally, plywood, like canvas, is a medium for artwork. The "utilitarian function" must be something other than mere display of the work. *See Cheffins v. Stewart*, 825 F.3d 588, 594 (9th Cir. 2016).

---

[3] Contra to their post-suit disparagement, Defendants' pre-suit actions weigh in favor of Cabe's works' recognized stature: seeking out Cabe's work based on recognition, commissioning, collecting and displaying (publicly and in corporate offices) hundreds of Cabe's paintings, having Cabe's paintings autographed by the featured musical performers, etc.
[4] Defendants assert the paintings were only "memorabilia" (p. 2) and not "art for art's sake" (pp. 6, 16), but VARA has no such requirements.

Nor is Cabe's artwork advertising and promotional material. "Advertising" is "the act of attracting attention to a product or business" and "promotion" is defined as "advertising or other publicity." *See Pollara v. Seymour*, 344 F.3d 265 (2d Cir. 2003). AEG's novel theory that Cabe's paintings were "advertising and promotional materials" because they were (allegedly) "copied from and strictly related to" advertising and promotional materials (Motion, p. 16) finds no support in case law. The issue is the status of the paintings, not what materials they may "relate to." Defendants make no contention that the paintings themselves constituted "advertising and promotional materials" – in fact they assert the paintings were not publicly displayed and that AEG never promoted the paintings (Motion, pp. 2, p. 6 n. 11).

### III.   NEGLIGENCE CLAIM

Cabe agrees to withdraw his negligence claim as to all Defendants.

### IV.   PARTIES

Defendants misstate the law, asserting that Robin Phillips "has no personal liability" and can't be held liable since she was "acting in the course and scope of her employment [and] [h]er actions are imputed to AEG" (Motion, pp.10-11). *See Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1349-50 (5th Cir. 1994) (action for copyright infringement does not require piercing of corporate veil to hold individuals liable even if they were also acting for corporation, since acting for the corporation does not relieve individuals of their responsibility); *Mead Johnson & Co. v. Baby's Formula Service, Inc.*, 402 F.2d 19, 23 (5th Cir. 1968) (trademark case; "the fact that the persons thus acting are acting for a corporation also, of course, may make the corporation liable under the doctrine of respondeat superior. It does not relieve the individuals of their responsibility."); *6 Patry on Copyright* § 21:81 ("there is no corporate veil: all individuals who

participate in the infringement are jointly and severally liable."); *Master Saddles, Inc. v. Taylor*, 2021 WL 1814697, at *9 (N.D. Tex. May 6, 2021).

Cabe is willing to drop Defendants AEG Live LLC and Anschutz Texas LP as parties to this case based on Defendants' representations (Motion, pp. 10-11) regarding these parties.

### V.  CONCLUSION

Cabe has pled sufficient facts to support claims under VARA and has stated facts to raise a "reasonable expectation that discovery will reveal evidence" supporting his claims. *Twombly*, 550 U.S. at 556. Defendants' motion merely presents unsupported allegations amounting to excuses for its conduct. Factual disputes are irrelevant to the present motion and properly the domain for trial. Cabe respectfully requests that Defendants' 12(b)(6) Motion be denied, and for such other and further relief to which he may be justly entitled.

Respectfully submitted,

*/s/ David L. Joers*
David L. Joers
Texas State Bar No. 10669800
Booth Albanesi Schroeder, PLLC
8117 Preston Road, Ste. 300
Dallas, Texas  75225
Tel.:       214/220.0444
Fax:       214/220.0445
E-Mail:   firm@IPofTexas.com

**ATTORNEYS FOR PLAINTIFF
TIMOTHY CABE BOOTH**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document has been served on counsel of record via the court's e-filing system on this 7th day of May 2024.

*/s/ David L. Joers*