UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY CABE BOOTH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION NO. 3:24-cv-00194-X** |
| v. | ) | |
| | ) | |
| | ) | |
| ANSCHUTZ ENTERTAINMENT | ) | |
| GROUP, INC; AEG LIVE LLC; | ) | |
| ANSCHUTZ TEXAS LP; AEG | ) | |
| PRESENTS, LLC; and ROBIN | ) | |
| PHILLIPS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Related to: | ) | |
| | ) | |
| JOHN FREEMAN BOOTH, JR. | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION NO. 3:24-cv-00269-X** |
| | ) | |
| v. | ) | |
| | ) | |
| ANSCHUTZ ENTERTAINMENT | ) | |
| GROUP, INC; AEG LIVE LLC; | ) | |
| ANSCHUTZ TEXAS LP;  AND AEG | ) | |
| PRESENTS, LLC; ) | | |
| ) | | |
| | ) | |
| Defendants. | | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Timothy Cabe Booth ("Cabe" or "Plaintiff") alleges as follows:

## **PARTIES**

1.          Plaintiff Cabe is a living individual and a Dallas County, Texas resident. Cabe is an artist and author of the individual works of visual art, each existing in a single copy as a painting and referred to in this Second Amended Complaint as the "Artworks." As to the entire collection of works of visual art that he compiled, assembled, selected, and/or coordinated over time into a collective whole and delivered to Defendants or their predecessors for the purpose of incorporation into and display in the Theatre building (defined below), the collection is referred to as the "Collective Work" which collection, as so constituted, was itself a work of visual art in the form of a "collective work" as that term is defined in the Copyright Act, existing in a single copy composed of the entire collection of Artworks incorporated into and on display at the Theatre.

2.          On information and belief, Defendant Anschutz Entertainment Group, Inc. is and has been at all material times a corporation doing business in Texas.

3.          On information and belief, Defendant AEG Live, LLC has been at all material times a limited liability company doing business in Texas.

4.          On information and belief, Defendant Anschutz Texas, LP is and has been at all material times a Texas limited partnership doing business in Dallas County, Texas.

5.          On information and belief, Defendant AEG Presents, LLC (formerly known as AEG Live, LLC) is and has been at all material times a Delaware limited liability company registered to do business and doing business in Texas. AEG Presents is the second-largest presenter of live music and entertainment events, after Live Nation.

6.          Defendants Anschutz Entertainment Group, Inc., AEG Live LLC, Anschutz Texas LP, and AEG Presents LC are referred to collectively herein as "AEG" or the "AEG Defendants"). The term "Defendants" when used by itself refers to all Defendants collectively.

Plaintiff's Second Amended Complaint – Page 2

7.        On information and belief, the AEG Defendants operated under a Lease at the time of the events complained of, the venue currently known as the "Texas Trust CU Theatre at Grand Prairie," previously known as "The Verizon Theatre," and before that as "Nokia Theatre" and "NextStage Performance Theater" ("Theatre").

8.        Cabe is informed and believes, and on that basis alleges, that at all relevant times mentioned in this Second Amended Complaint, Defendants were acting in concert and actively participating with each other in committing the acts alleged herein, and were agents of each other and were acting within the scope and authority of that agency with knowledge, consent and approval of one another.

## JURISDICTION AND VENUE

9.        This court has jurisdiction of the Visual Artists Rights Act ("VARA") claims under 17 U.S.C. §106A, §113(d) and 28 U.S.C. § 1331 and 1338(a).

10.        Venue is proper in this Court under 28 U.S.C. § 1391 (b) and (c) because all Defendants are residents of this District for the purpose of determining venue and a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

11.        This controversy arises because of Defendants' intentional distortion, mutilation, modification and/or destruction (or destruction through exercise of gross negligence) of the Artworks, individually and/or that composed the Collective Work as a whole, and which were and are of artistic and cultural significance in the community, of substantial public interest, and were

painted with great skill and exceptional technical proficiency. The wrongful acts were done without Cabe's prior knowledge or consent and in violation of his rights under VARA.

12.          Cabe holds a BFA in painting and drawing from the University of North Texas School of Visual Arts, and he is a well-recognized artist in the Dallas arts and entertainment community.

13.          In about 1997, Cabe was commissioned to hand paint a large wooden 3x3 foot "performer portrait" to memorialize the opening of the Curtain Club in Dallas. The wooden medium allowed the painting to be mounted flush on the wall.  This painting was so well received that the single painting commission turned into regular painting commissions at the Curtain Club and other venues such as: The Palladium Ballroom, Trees Club, Theatre at Grand Prairie ("Theatre"), Pizza Hut Park, and the Sprint Center in Kansas City, Missouri. AEG hired Cabe to paint performer portraits for the Palladium Ballroom (later known as the "South Side Ballroom").

14.          In about May 2002, Cabe continued to create performer portraits for the Curtain Club and other Dallas area venues. Managers of the Texas Trust CU Theatre at Grand Prairie" (then known as "NextStage") approached Cabe to paint performer portraits, and in May of that year Cabe began painting portraits for the Theatre.

15.          For each painting commissioned, Cabe obtained a 3x3 foot wooden piece upon which he painted. Prior to delivery to the Theatre, each wooden piece was drilled with holes for screws in order to affix the painting to the walls and incorporate the painting into the building. Cabe consented to the Artworks being made part of the building, and the owner of the Theatre did so consent by permitting the painted wood to be made part of the Theatre and affixed to the walls of the building with screws. Plaintiff is informed and believes that the owner of the Theatre is and at all relevant times has been the City of Grand Prairie.

Plaintiff's Second Amended Complaint – Page 4

16.        Cabe continued painting for the Theatre for 10 years until 2012, resulting in a substantial body of work, with over three hundred of Cabe's paintings incorporated into and displayed on the walls of the Theatre. Among some of the more famous individuals who are subjects of Cabe's performer portraits include: Gladys Knight, Ex-President Clinton, Willie Nelson, Bruce Springsteen, Bette Midler, David Copperfield, Duran Duran, Billy Idol, George Lopez, Bob Dylan, Merle Haggard, Dolly Parton, Tom Jones, Ringo Starr, Paul Simon, Al Gore, BB King, Sting, Robin Williams, George Jones, Patti LaBelle and others.

17.        Between 2002 and 2012, Cabe painted and delivered hundreds of performer portraits for installation at the Theatre. **Appendix A, attached to the original complaint,** contains a partial list of over three hundred of the performer portrait paintings. AEG leases and manages the Theatre under a Commercial Lease ("LEASE") from the City of Grand Prairie and describes the Theatre as a five-story concert and entertainment facility seating over 6,000. The Lease authorizes the tenant to act on the Landlords behalf, making the Tennant it's agent to fulfill obligations to keep the facility in compliance with Applicable Laws.  To see the Theatre at Grand Prairie's promotions of the performer portraits, one can go to YouTube. See https://youtu.be/KjNFm5_1YfQ. This video shows a tour of the Theatre conducted by AEG's Director of Marketing; a number of the Artworks in the backstage area of the Theatre are shown, prominently displayed along the walls of the hallway that all the performers come through to the dressing rooms, and also on the walls of the dining room used by the performers (and also some staff); Cabe's paintings are described as being "amazing" and "incredible" in the video.

18.        Upon information and belief, an average over twenty-five thousand individuals attend events at the Theatre per month. To see the Artworks on display at the Theatre, see https://maps.app.goo.gl/kMAjs9HMgDLEsHSZ7.

Plaintiff's Second Amended Complaint – Page 5

19.          Cabe's performer portraits were prepared without the performer's presence, requiring the use of acceptable approved images of the performer. Cabe's performer portraits for the Theatre (including those listed in **Appendix A** attached to the original complaint) were based on images he was permitted to use, furnished to him by the Theatre (or AEG) including images sometimes called "admats," and the painted portraits constituted derivative works fully protected by VARA. The paintings were done in oil; they were not posters.

20.          Cabe's performer portraits delivered  to the Theatre contained Cabe's name and identifying logo, and were viewed and presented to the performer for autographing.

21.          In creating the performer portraits for the Theatre, Cabe was a 1099 independent contractor rather than an employee, and the paintings were not "works made for hire." Cabe retained the copyrights to the Artworks and the Collective Work, and no copies thereof can be made without his prior consent. Further, at no time did Cabe sign a waiver of his moral rights as permitted in 17 U.S.C. Section 106A(e).

22.          Cabe delivered over four hundred forty four (444)  paintings that were made a part of the building by permanently screwing them to the walls.

23.          Cabe is informed and believes that hundreds of Artworks were removed from the building by Defendants following weather-related damage that occurred in the winter of 2021. Pursuant to 17 U.S.C. Section 113(d)(2), Plaintiff was entitled to remove the Artworks at his own expense and thereby have title in the Works deemed to be in his name upon receiving notice of the Defendants' intent to remove the Artworks. Under Section 113, the owner of the Theatre (or as Plaintiff asserts, the Defendants acting as agents of the owner or with the authority, ratification, and approval of the owner) were to give written notice to the artist (Cabe) that Defendants wished to have all or specific Artworks removed so as to permit Cabe to remove the Artworks at his

expense within 90 days of Defendants' written notice, in which case, pursuant to Section 113(d)(2)(B), title to such Artworks would vest in the artist.

24.          Defendants did not provide such statutory notice to Cabe but instead unilaterally removed the Artworks that were affixed to the walls. Plaintiff is informed and believes that many of the Artworks were mutilated and/or destroyed. Plaintiff is informed and believes that Defendants contend that because the Artworks were damaged or so badly damaged that it justified their destruction by disposing of them in a dumpster, while others were unlawfully removed and stored in a place where they are no longer part of the building or on display. However, even if damage had been sustained by the Artworks, that did not permit Defendants taking action most expedient for them. Further, the destruction of the Artworks under those circumstances is the subject of spoliation of evidence on a pervasive scale.

25.          Plaintiff is informed and believes that AEG has no more than approximately one hundred (100) of the Artworks remaining in its possession.

26.          Defendants were well aware of the VARA statute prohibitions, as Defendants had previously been sued for destroying artworks under VARA. *See Ockerman v. Anschutz Entertainment Group, Inc.*, No. 2:11-cv-09422 (C.D. Cal. filed 11/14/2011) (AEG sued for dumping artworks in the trash; AEG settled the case before trial).

27.          As set forth herein, Defendants destroyed, or caused to be mutilated and destroyed, the Artwork.  By destroying the Artwork or pieces of the Collective Work without notice to Plaintiff, and in plain view of visitors of the Theatre where the Artwork was displayed, Defendants' act of destruction – and the resulting empty spaces on the walls where the Artwork had been displayed to viewers who had previously seen the Artwork and knew that it had been removed as if nothing but trash – conveyed the false statement and was a false statement to members of the public that the artist and his work did not rise to the level of being worthy of any preservation,

Plaintiff's Second Amended Complaint – Page 7

including but not limited to, legally-required preservation under VARA of works of visual art, thereby injuring Plaintiff in his status and occupation as a professional artist. Defendants, by complying with such laws, could have prevented making the false statements concerning the status of Plaintiff as an artist and the status of Plaintiff's work.

28.        Plaintiff is informed and believes and thereon alleges that under the terms of the Lease at all times relevant hereto, each of the Defendants, named or to be named, was the agent, affiliate, officer, director, manager, principal, partner, joint venture, alter-ego and/or employee of the remaining Defendants and/or of the owner of the Theatre and was at all times acting within the scope of such agency, affiliate, officer, director, manager, principal, partner, joint venture, alter-ego and/or employment relationship and actively participated in and financially benefitted from, or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and all of the violations of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

## CLAIM FOR VIOLATION OF THE VISUAL ARTISTS RIGHTS ACT (17 U.S.C. §106A) – RIGHT OF INTEGRITY

29.        Cabe incorporates and realleges all previous allegations as if fully set forth herein.

30.        The Artworks and the Collective Work are each works of visual art.

31.        Defendants during remodeling of the Theatre willfully and intentionally destroyed, distorted, mutilated, and/or otherwise modified the Artworks and/or pieces of the Collective Work. The destroyed Artworks were works of recognized stature. With respect to the Collective Work, which resulted in an unknown number of individual Artworks being destroyed, the

destruction of those Artworks resulted in the unlawful distortion, mutilation or modification of the Collective Work as a whole and which was prejudicial to Cabe's honor and reputation as an artist.

32.        Cabe did not give consent to Defendants to destroy his Artworks or to mutilate or modify the Collective Work. Cabe has not waived any of his rights granted under VARA, 17 U.S.C. §106A.

33.        In engaging in such conduct, Defendants acted willfully, intentionally, and/or with gross negligence.

34.        Cabe is entitled to actual damages for the injuries and loss sustained as a result of Defendants' conduct and any additional profits of Defendants not taken into account in computing actual damages, including expenses saved in not having to suspend repairs for 90 days to permit Plaintiff, as required by law, to remove his Artworks, and/or profits realized from opening the Theatre earlier than would have occurred had the statutory 90 days been afforded to Plaintiff.

35.        Cabe is entitled to recover his reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

36.        Because Defendants acted willfully, pursuant to VARA and the Copyright Act, Cabe is entitled to, and may seek statutory damages of up to $150,000 for each work at issue under 17 U.S.C. § 504(c).

## **PRAYER FOR RELIEF**

WHEREFORE, Cabe prays for Judgment as follows:

a.     A judgment in Cabe's favor and against Defendants on all of Cabe's claims against Defendants;

b.     For actual damages and any additional profits or expenses saved by Defendants not taken into account in computing actual damages, including expenses saved and/or profits realized in not having to suspend repairs for 90 days;

c.      That Cabe receive statutory damages under 17 U.S.C § 504(c) for each violation of rights under VARA up to the maximum allowed by law, or actual damages, as well as attorneys' fees under 17 U.S.C. § 505;

d.      That the Court award Cabe his attorneys' fees, costs, and expert fees, as allowed by law;

e.      An award of prejudgment and post judgment interest, as provided by law;

f.      For preliminary and permanent injunctions protecting the remaining Artworks while still in Defendants' possession and restraining Defendants and their employees, agents, servants, attorneys, representatives, successors and assigns, and any and all persons in active concert or participation with any of them, from further damaging, mutilating or destroying the Artworks or engaging in any further violations of VARA;

g.      That the Court order Defendants to provide an accounting and proof regarding the Artworks, identifying their location, and ordering the transfer of all remaining removed Artworks to Cabe as rightful owner thereof; and

Such other and further relief to which Cabe may be justly entitled.

## **JURY DEMAND**

Cabe respectfully demands trial by jury.

Dated this 24th day of February 2025.

Respectfully submitted,

/s/ John F. Booth Sr.

_____

John F. Booth Sr.
Texas Bar No. 02650000

7306 Debshire Circle
Dallas Texas 75231
Telephone 214-215-4253

Plaintiff's Second Amended Complaint – Page 10